# NATIONAL SURETY COMPANY ·v. AUGUST S. WITTICH.[1]

February 11, 1932.

No. 28,719.

*Courtney & Courtney,* for appellant.

*O'Brien, Horn & Stringer* and *McNeil V. Seymour,* for respondent.

OLSEN, J.

Appeal by plaintiff from an order of the district court holding that plaintiff's judgment was discharged by defendant's discharge in bankruptcy and ordering the judgment satisfied.

Defendant was postmaster at Kelly Lake in this state from July, 1914, until January 31, 1921. Plaintiff was surety upon defendant's official bond. The postoffice department found a shortage of $2,881.01 in defendant's account as postmaster. Demand

[1]Reported in 240 N. W. 888.

for payment thereof was made by the department, and defendant failed to pay. Proof of the shortage was presented to plaintiff and demand for payment made upon it as surety on the bond. Plaintiff then paid to the government $1,000, the amount of its obligation under the bond. Thereafter plaintiff brought suit against the defendant to recover the sum so paid, with interest and costs, and on June 16, 1928, recovered judgment against defendant thereon for $1,374.83.

On June 13, 1931, defendant made a motion before the district court wherein said judgment was entered for an order discharging and satisfying said judgment of record and discharging certain garnishment proceedings instituted by plaintiff thereunder. The grounds for such motion were that on June 6, 1928, defendant was adjudged a bankrupt in the United States district court, and on October 6, 1928, was by that court granted a discharge as a bankrupt. Defendant had included in his schedule of debts his indebtedness to this plaintiff, evidenced by the judgment mentioned. Plaintiff appeared on the hearing of said motion and opposed the same on the ground that plaintiff's judgment was not discharged by the discharge in bankruptcy but was for a debt excluded from such discharge under the provisions of U. S. C. Title 11, § 35, p. 246, 1 Mason, U.S.C.A. 1926, p. 464 (11 USCA, § 35). The trial court granted the motion to discharge the judgment, and this appeal followed.

The section of the U. S. Code above cited provides:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (fourth) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

The trial court in its findings of fact in this action found that defendant did not truly account for and pay over to the United States all of the public funds of the postoffice at Kelly Lake while he was postmaster at that office, and that there was a balance of $2,881.01 of such funds not accounted for, due and owing from him to the United States on that account; that there was a shortage in his account as postmaster in the amount stated.

Defendant relies upon the further findings of the court that this shortage arose during the period from April 1, 1920, to January 31, 1921; that during the time from March 15, 1920, to the early part of April, 1920, one Barney Karon was placed in charge of said postoffice as acting postmaster; and that from April, 1920, to the latter part of October, 1920, one Margaret Hays was placed in charge of the postoffice by defendant as clerk.

Defendant urges that because the court did not find that the defalcation and shortage were not caused by the acts of Barney Karon or Margaret Hays, and did not expressly find that they were caused by defendant personally, therefore it is not shown that there was any misappropriation or defalcation by defendant.

While Karon appears to have been appointed as acting postmaster and to have been in charge of the office for two or three weeks, he apparently never qualified and did not become an officer of the United States postoffice department. If the defendant permitted him to be in charge of the postoffice, it was as defendant's representative, for whose acts defendant was responsible. Margaret Hays was defendant's clerk, for whose acts he was responsible. The court held him responsible for the shortage. No attempt was made by defendant on the hearing of the motion to show that any funds were misappropriated by Karon or Margaret Hays; and the court, on defendant's objection, excluded from consideration the evidence received at the prior trial, so we have no facts except as stated in the findings. The findings show failure to account for and pay over funds coming into defendant's control as an official of the federal government. Prima facie there is a defalcation or misappropriation of government funds and nothing to overcome that conclusion.

The burden of proof rested on the plaintiff to show that its judgment was not discharged by the discharge in bankruptcy. The findings of fact and judgment, we think, furnish such proof and permit of no other conclusion than that the debt evidenced by the judgment was created by a defalcation by the defendant while acting as a public officer.

It is contended that the (second) provision of § 35, Title 11, of the Code, excepting from the discharge "liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another," should be considered in connection with the (fourth) provision covering "misappropriation, or defalcation while acting as an officer," and that a debt created by misappropriation or defalcation is not excepted from the discharge unless it is shown that such misappropriation or defalcation was wilful and malicious. We do not so construe § 35. Some of the dictionary definitions of "defalcation" are "a diminution," "an abatement," "a deficit." In the case of In re Butts (D. C.) 120 F. 966, 970, it is said:

"It must be conceded, however, that the word 'defalcation' is broader than 'embezzlement' or 'misappropriation.' Neither class of debts so created should be construed out of the section providing what debts shall not be affected by a discharge."

Before the enactment of the present bankruptcy law in 1898, it was held that under prior bankruptcy acts any debts owing to the United States were not affected by a release in bankruptcy because no reference was made in the bankruptcy acts to such debts. U. S. v. Herron, 20 Wall. 251, 22 L. ed. 275. The same was held as to debts due a state. State v. Shelton, 47 Conn. 400. Since the act of 1898 excepts from the discharge debts due as a tax levied by the United States, it has been held that debts due the United States are now discharged by a discharge in bankruptcy, unless excepted from the discharge by provision (second) or (fourth) of § 35. Olds v. Forrester, 126 Iowa, 456, 102 N. W. 419.

It seems reasonable to conclude that by this change in the statute congress, while intending that ordinary contract debts owing to the United States or states and municipalities should be discharged by a discharge in bankruptcy, did not intend that defalcations or defaults by public officers in their official capacity should be so discharged.

The case of McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 39, 61 L. ed. 205, while not involving a defalcation under § 35

(fourth), is interesting as showing the application of the words "willful and malicious injuries to the person or property of another" under the (second) provision of the section. In that case plaintiff in error had converted certain stocks owned by defendant in error. The fact of such conversion, without other showing, was held to be a wilful and malicious injury to property of another.

In our present case funds belonging to the United States, received at the postoffice at Kelly Lake while defendant was postmaster and in control thereof, were unaccounted for and not paid. The funds disappeared, and defendant was held liable therefor. It is not shown what became of these funds. If not a conversion of property, it was a defalcation by a public officer.

Defendant cites Mackey v. U. S. (C. C. A.) 290 F. 18. That was a criminal prosecution for embezzlement of public funds. It was held that an indictment for embezzlement to be sufficient must charge criminal intent, intent to defraud. The case is without application here.

In the former action between these same parties, reported in 184 Minn. 44, 237 N. W. 690, we held that plaintiff became subrogated to the rights of the government so as to be an existing creditor of defendant from the time it became surety on his bond. This is not now controverted. When plaintiff paid defendant's debt to the government to the extent of its bond, it became subrogated to all the rights of the government to recover and enforce defendant's debt to the extent of such payment.

Many cases, not herein referred to, have been cited. Many of them arose under prior bankruptcy laws or under the present law before § 35 was amended, and involved the construction of said section when it excepted from the discharge only such debts created by fraud as had been reduced to judgment prior to the discharge. We have not found anything to change our conclusions.

Order reversed.