Riley, J.
This is an action of contract to recover money paid by the plaintiff to the Judge of the Probate Court of Hampden County as surety on a guardian’s bond given by the defendant as guardian of the estates of two minors.
The evidence tended to' show that the defendant was appointed guardian of the two minors in question on September 20, 1922 and filed a guardian’s bond in the usual form in the sum of $2000., which was approved on October 6, 1922. On this bond the plaintiff was one of the *343 two sureties. It further appeared that on November 16, 1938 the defendant filed his resignation as guardian, which was allowed by the court on April 14, 1939 and that one William T. Cavanaugh was appointed guardian in his place; that on August 21, 1939 the defendant filed substituted seventh and final accounts covering the period from September 1, 1935 to August 16, 1939, in which accounts the defendant charged himself with a total of $1349.89 as money received, asked for the allowance of expenses and disbursements in the sum of $751.60 and charged himself with a balance of $598.29 due to the estates of said wards; that said accounts were allowed on September 12, 1939 and the Probate Court then adjudicated that the said guardian had the sum of $598.29 as the property of said wards to be accounted for by him. It further appears that on March 19, 1940 the aforesaid William T. Cavanaugh, who had succeeded the defendant as guardian of the minors in question, filed in the Probate Court a petition in equity setting forth the facts as above stated with a further allegation that he had demanded from the defendant the sum of $598.29, together with interest thereon from September 12, 1939, and that the defendant had failed, neglected and refused to pay the same; that on November 26, 1940 the petition was taken for confessed and the court decreed that the defendant pay to the minors the said sum of $598.29 with interest, expenses and costs and execution was ordered to issue for this sum. There was further evidence that the defendant did not pay said sum decreed to be paid by him to the aforesaid minors, but that the plaintiff paid the same as one of the sureties on said bond; that since this suit was brought, the defendant filed a voluntary petition in bankruptcy and received his discharge in said proceedings and that the plaintiff’s claim was listed in the bankrupt schedules and *344 the plaintiff proved her claim in the bankruptcy proceedings but received no dividends therefrom.
The sole question of law argued by the parties is the effect of the defendant’s discharge in bankruptcy upon the plaintiff’s claim.
The court, in finding for the defendant, made the following special finding of fact:
‘ ‘ The Court specially finds that, on the facts agreed to by the parties to this action, there was no evidence that the defendant misappropriated any funds from the estate of his wards, or that he was in any way benefited by his investment of said ward’s funds, or that he was guilty of any misconduct sufficient to constitute a defalcation; that the judgment in the Probate Court shows a simple debt against the defendant which was proveable in bankruptcy and was discharged in his voluntary bankruptcy; and that the plaintiff has failed to sustain the burden of proving that his duly scheduled debt was excepted from the operation of a discharge in bankruptcy.”
while he denied the following Request for Rulings, duly filed by the plaintiff:
1. Upon all the law and evidence, the finding should be for the plaintiff because the debt sued on was a debt created by the fraud, embezzlement, misappropriation or defalcation of the defendant while acting as an officer or in any fiduciary capacity and is not discharged by the subsequent discharge in bankruptcy.
6. If the defendant failed to turn over to his wards the amounts decreed by the Judge of Probate Court to be due said wards from defendant as their guardian and judgment for said amounts was obtained on the defendant’s bond which was paid by the plaintiff as surety on said bond, the defendant is guilty of a defalcation as used in section 17 2 (4) of the Bankruptcy Act.
The first Request was denied as being based upon an assumption of facts found to the contrary by the court and *345 the sixth was denied on the ground that the court had found to the contrary. The following Bequests were granted as correct statements of law but stated by the court to be inapplicable to the facts found in this case:
2. If the claim of the obligee on a bond is a non-dis-chargeable one in bankruptcy, and the surety pays it, then the .surety is subrogated not only to the claim, but to its non-dischargeable quality. National Surety Co. vs. Wittich 185 Minn. 321 s. c. A. B. R. (NS) 343.
3. Where a solvent surety has been compelled to make good a wrong of a bankrupt fiduciary that comes within section 17 a (4) of the Bankruptcy Act, he is subrogated to the claim of the creditor, and hence his claim against the bankrupt principal falls within the provision and is not discharged.
5. “Defalcation” as used in the section of the Bankruptcy Act providing that a discharge releases the bankrupt from all debts except those created by “defalcation” while acting as an officer or in any fiduciary capacity, means the failure of one who has received money in trust to pay it over as he ought, being a broader word than “fraud”, “embezzlement” or “misappropriation”, and covering cases where there is no fraud, embezzlement, or willful misappropriation. In re Herbst (D. C. N. Y.) 27 Fed. Supp. 353.
The plaintiff contends that the case was submitted to the trial judge upon an agreed statement of facts and that, consequently, the trial judge was in error in denying her Bequests for Bulings because they were based upon assumption of facts found to the contrary by him, and further argues that he had no power to make such contrary findings of fact.
There appears to have been no written agreed statement of facts filed by the parties and the Beport itself makes no reference to such an agreement, although the judge in his special finding of fact does speak of “the facts agreed to by the parties to this action”. We think *346 that the most that could he inferred in the case at bar is that there was an agreement of the parties as to the evidence to be considered by the court. Under such an agreement it is the right, if not the duty, of the court under certain circumstances to make findings of fact. Frati vs. Janini, 226 Mass. 430. Atlantic Maritime Co. vs. Gloucester, 228 Mass. 519. Kimball vs. George A. Fuller Co., 258 Mass. 232. Scaccia vs. Boston Elevated Railway, 308 Mass. 310. Even under a “case stated” which is an agreement by the parties upon all the material ultimate facts on which the rights of the parties depend, the trial judge could draw from these facts any inference of fact that might have been drawn therefrom at a trial, unless the parties expressly agreed that no inferences should be drawn. G. L. (Ter. Ed.) Chap. 231 Sec. 126. There was no such express agreement as to inferences in the case at bar.
The plaintiff, by the various Requests refused by the trial judge, sought a ruling that as matter of law the debt sued on was created by the fraud, embezzlement, misappropriation or defalcation of the defendant while acting in a fiduciary capacity and, consequently, was not discharged by his discharge in bankruptcy by reason of the provisions of Sec. 17 — 2 (4) of the National Bankruptcy Act which excepts such debts from the benefits of a discharge in bankruptcy. If there had been a misappropriation by the defendant of the funds in his hands, his discharge in bankruptcy would not have been a defence to an action like the present one. Brown vs. Hannigan, 210 Mass. 246.
The plaintiff, as we understand her, does not contend that there was a misappropriation as matter of law, but rather that there was a defalcation. The trial judge has specifically found as a fact that the defendant was Not Guilty of any misconduct sufficient to constitute a defalcation. The question for decision is whether such a finding was warranted *347 on the facts reported or, in other words, did these facts require a ruling that as matter of law there was a defalcation by the defendant while acting as a fiduciary.
The cases relied upon by the plaintiff are those of public officers or a receiver in the U. S. Court. The defendant contends that these cases are not applicable to the case at bar. In Central Hanover Bank & Trust Co. vs. Herbst, 93 Fed. (2d) 510 in which the receiver spent an allowance granted him before the time of appeal from the order had expired, the court said “All we decide is that when a fiduciary takes money upon a conditional authority that may be revoked and knows at the time that it may be, he is guilty of a defalcation although it may not be a fraud or an embezzlement or, perhaps, not even a misappropriation.” In National Surety Co. vs. Wittich, 185 Minn. 321, the defendant, who was a Postmaster, was short in his accounts while the office was in charge of a subordinate. The court held that as the funds were received and were unaccounted for and not paid over on demand it was a defalcation of a public officer under the pertinent terms of the Bankruptcy Act. In City of Syracuse vs. Roscoe, 123 NYS 403, the defendant was a city treasurer who lost the municipal funds by reason of the default of a subordinate. The court said “The word ‘defalcation’ does not necessarily imply any fraud or criminal act on the part of the person guilty of it. It has a wider meaning than the words fraud, embezzlement or misappropriation. It is a defalcation where a person fails to pay over public monies for which he is properly accountable. In re Butts, 120 Fed. 966.” The same result was reached in Orndorff vs. State, 108 S.W. (2d) 206 (Tex. Civ. App.) It was there held that a discharge in bankruptcy did not protect a sheriff where he had retained money which belonged to the state, although he honestly felt that he was entitled to retain it. It was said ‘ ‘ There is a defalca *348 tian when a person charged with a duty to do so fails to pay over public monies for which he is accountable.’’ However, the case of England Loan Co. vs. Campbell, 183 Ark. 49, seems to be directly in point. It was held in that case, in construing the effect of a discharge in bankruptcy, that an administrator acts in a fiduciary capacity and that while no fraud or embezzlement was charged, the failure to account and pay over to his successor the funds of the estate was a defalcation within the bankruptcy statute. The same result seems to have been reached in Laramor, Executor vs. McKenzie, Gdn., 60 Ga. 532 and Fine vs. Saul, 184 Ga. 309. The case of Indemnity Insurance Co. vs. Covington, 14 N. Y. S. (2d) 683, goes still further. That case holds that where improper investments made by an administratrix resulted in her being surcharged upon an accounting with the amount by which the estate was lessened, there was a defalcation while acting in a fiduciary capacity and a judgment recovered against the administratrix by the surety on her bond was not released by the subsequent discharge in bankruptcy of the administratrix.
On principle as well as on authority, we think that the facts in the case at bar required a ruling that there was a defalcation of a fiduciary under the terms of the Bankruptcy Act. The duty of a guardian to turn over to his wards or their successor the funds in his possession is fully as binding as the obligation of a public officer. The facts in the case at bar show that the defendant, in his account, charged himself with a certain amount of cash or personal property and a decree was later made by the court to the effect that he owed such an amount to the estate. There is no intimation in the Report that he was charged with this amount by reason of negligence or an improvident investment. In such cases, if the fiduciary acts with reasonable care and prudence, he is allowed such loss in his accounting and only *349 charged with the balance for which the court finds he is properly responsible. The present case simply shows that the defendant had a certain amount of money or personal property and did not turn it over to his successor. We cannot feel that this is a simple debt dischargeable by the bankruptcy of the defendant as found by the trial judge. The Court should have given the First, Fifth and Sixth rulings requested by the plaintiff. As in our opinion the evidence requires a finding for the plaintiff as matter of law and as it appears from the Report that the amount of the defendant’s liability has been determined by the decree in the Probate Court, the finding for the defendant is to be set aside and judgment ordered for the plaintiff in the sum of $598.29, with interest thereon from September 12, 1939. G. L. (Ter. Ed.) 231 Sec. 110, 124.